**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIOP KAMAU, *et al.*,<br><br>            *Plaintiffs*,<br><br>      v.<br><br>GREGORY SLATE, *et al.*,<br><br>            *Defendants*. | 25-cv-2748 (SLS) |

**DEFENDANTS DISTRICT OF COLUMBIA,**
**JANESE BECHTOL, AND SARAH CONNELL'S MOTION TO DISMISS**

Defendants District of Columbia (the District), Office of the Attorney General Domestic
Violence and Special Victims Section Chief Janese Bechtol, and Assistant Attorney General
Sarah Connell (collectively, "District Defendants") respectfully move the Court under Fed. R.
Civ. P. 12(b)(5) and (6) to dismiss the Complaint's claims against District Defendants.
Defendants Bechtol and Connell were not appropriately served and the claims against them
should be dismissed for improper service. Alternatively, the Complaint fails to state a plausible
claim for relief against any District Defendant. A memorandum of points and authorities in
support of this motion and a proposed order are attached.

Date: October 21, 2025                    Respectfully submitted,

                                          BRIAN L. SCHWALB
                                          Attorney General for the District of Columbia

                                          CHAD COPELAND
                                          Deputy Attorney General
                                          Civil Litigation Division

                                          */s/ Steven N. Rubenstein*
                                          STEVEN N. RUBENSTEIN [1013094]
                                          Chief, Civil Litigation Division Section V

*/s/ David B. Jastrab*
DAVID B. JASTRAB [1048299]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 309-8882
david.jastrab@dc.gov

*Counsel for District Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, I caused a copy of Defendants District of
Columbia, Janese Bechtol, and Sarah Connell's Motion to Dismiss to be served on Plaintiffs *pro
se* via mail at the following address:

Diop Kamau and Tyra Ferrell
9217 Hampton Glen Court
Tallahassee, FL 32312

*/s/ David B. Jastrab*
DAVID B. JASTRAB
Assistant Attorney General

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIOP KAMAU, *et al.*, | |
| *Plaintiffs*, | |
| v. | 25-cv-2748 (SLS) |
| GREGORY SLATE, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISTRICT OF COLUMBIA, JANESE BECHTOL, AND SARAH CONNELL'S MOTION TO DISMISS

### INTRODUCTION

Plaintiffs *pro se* Diop Kamau and Tyra Ferrell bring this lawsuit against Defendants District of Columbia (the District), Office of the Attorney General Domestic Violence and Special Victims Section Chief Janese Bechtol, Assistant Attorney General Sarah Connell (collectively, "District Defendants"), and two private parties: Gregory Slate and Sarah Barger. Plaintiffs allege five claims directed at District Defendants: two claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, one claim under 42 U.S.C. § 1983, and tort claims for malicious prosecution, abuse of process, and civil conspiracy. District Defendants respectfully move the Court under Fed. R. Civ. P. 12(b)(5) and (6) to dismiss the Complaint's claims against District Defendants. Defendants Bechtol and Connell were not served and the claims against them should be dismissed for improper service. Alternatively, the Complaint fails to state a plausible claim for relief against them, as it also does for the District.

### FACTS

This litigation is the latest salvo in a protracted battle between Plaintiffs *pro se* Diop

Kamau and Tyra Ferrell (a married couple) and Defendant Gregory Slate.  Amid other claims, Plaintiffs and Slate began volleying allegations of stalking and other criminal behavior, which have proliferated into numerous lawsuits in multiple jurisdictions.  *See, e.g.*, Compl., *Kamau v. Slate*, No. 11-cv-522 (RH) (N.D. Fla. Oct. 12, 2011), Dkt. No. 1 (Kamau sues Slate and others, describing deterioration of business relationship, harassing, and stalking behavior, and alleging various defamation, privacy, and property torts); Compl. ¶ 1, *Slate v. Kamau*, No. 20-cv-3732 (BAH) (D.D.C. Dec. 18, 2020), Dkt. No. 1 (Slate alleges Diop and Ferrell "terrorize" him, including through defamation, distributing photographs, videos, and private medical records, and through "court orders, criminal warrants, and contempt orders"); Compl. ¶ 1, *Slate v. Kamau*, No. 21-cv-390 (MW) (N.D. Fla.. Dec. 18, 2020), Dkt. No. 1 (same); Compl., *Slate v. Kamau*, No. 2024-CAB-000354 (D.C. Super. Ct. Jan. 18, 2024) (Slate alleges extended history of Kamau fabricating narratives and alleges claims for malicious prosecution, abuse of process, defamation, and libel); *Kamau v. Slate*, 24-cv-207 (AW) (N.D. Fla. May 13, 2024), Dkt. No. 1 (Kamau sues Slate, alleging fraudulent efforts to disrupt business operations and abuse process through frivolous litigation); Removed State Court Pleadings at 8, *Kamau v. Johnson*, 25-cv-233 (AW), (N.D. Fla. May 16, 2025), Dkt. No. 1-1 (Kamau sues Slate and others, citing coordinated scheme of harassment and alleging "fraud, defamation, civil conspiracy, abuse of process, malicious prosecution, and tortious interference").

This multi-front legal battle included an August 2009 complaint by Slate against Kamau in the District of Columbia Superior Court's Civil Division, alleging harassment, and a 2010 action by Slate against Ferrell for a civil protection order (CPO).  *See* Pls.' Ex. 8, Pet'r's Mot. to Certify Civ. Protection Order Case to Civ. Calendar, No. 2010-CPO-004129 (D.C. Super. Ct. Dec. 10, 2010).  In 2010, District law authorized the Office of the Attorney General (OAG) to

"provide individual legal representation," D.C. Code § 16-1003(b) (2009 ed.), to a petitioner—including "any person who alleges . . . that he or she is the victim of interpersonal . . . violence, [or] stalking," *id.* § 16-1001(12) (2009 ed.)—who "file[d] a petition for civil protection in the Domestic Violence Unit against a respondent who ha[d] allegedly committed or threatened to commit one or more criminal offenses against the petitioner," *id.* § 16-1003(a) (2009 ed.).  Chief Bechtol and Assistant Attorney General Connell represented Slate in securing and enforcing a CPO against Plaintiff Ferrell, an effort that included a motion to certify Slate's CPO case against Ferrell to the Civil Division so that the closely related matters could be heard in conjunction, Pls.' Ex. 8, Pet'r's Mot. to Certify Civ. Protection Order Case to Civ. Calendar, No. 2010-CPO-004129 (D.C. Super. Ct. Dec. 10, 2010), and pursuing contempt orders to achieve compliance with the terms of the CPO, D.C. Defs.' Ex. 1, Docket, *Slate v. Kamau*, No. 2009-CA-005749-B (D.C. Super. Ct.); D.C. Defs.' Ex. 2, Docket, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct.).[1]  The CPO expired on April 13, 2012, and both the case, and OAG's representation of Slate, ended, save for an opposition to Ferrell's March 17, 2015 motion to reopen the case, which was denied on April 3, 2015.  D.C. Defs.' Ex. 3, Order, at 2, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct. Apr. 3, 2015).

Separately from that Superior Court matter, Plaintiffs allege various acts of harassment and unlawful conduct on the part of Slate and Barger, which they claim continued from 2007 through 2024, but no allegation related to these claims involves any District Defendant.  *See* Compl. ¶¶ 2, 5–6, 10–12, 14–15, 25–27, 31–38.

---

[1]     A District Court "may take judicial notice of the D.C. Superior Court docket without convening defendants' motion to dismiss into one for summary judgment as to this claim." *Mehari v. District of Columbia*, 268 F. Supp. 3d 73, 83, n.2 (D.D.C. 2017) (first citing *Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014); and then citing *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 43 (D.D.C. 2015)).

Plaintiffs press five claims against District Defendants: violation of RICO, conspiracy to

violate RICO, violation of First and Fourteenth Amendment rights under 42 U.S.C. § 1983, and

tort claims for malicious prosecution, abuse of process, and civil conspiracy.

**STANDARD OF REVIEW**

**Fed. R. Civ. P. 12(b)(5)**

Under Fed. R. Civ. P. 12(b)(5), a party may move to dismiss for "insufficient service of

process."  For service on an individual within the District of Columbia, delivery of the summons

and complaint must be made personally, made to a suitable person at the individual's dwelling,

or made to an agent authorized to accept service. Fed. R. Civ. P. 4(e)(2).  Alternatively, service

can comply with the requirements of Super. Ct. Civ. R. 4, which prescribes the various means by

which a party may be served with a summons and complaint in a Superior Court civil

proceeding.  Fed. R. Civ. P. 4(e)(1) (service proper if in compliance with state law).  Although

permitting a party to perfect service may be appropriate in some cases, "if dismissing the claim

without prejudice due to insufficient service would lead to the refiling of a meritless claim,

however, . . . it is proper to consider other means of dismissing the case." *Dominguez v. District

of Columbia*, 536 F. Supp. 2d 18, 22 (D.D.C. 2008) (citing *Simpkins v. D.C. Gov't*, 108 F.3d 366,

369–70 (D.C. Cir. 1997)); *see also Atchison v. U.S. Dist. Cts.*, 190 F. Supp. 3d 78, 92 (D.D.C.

2016) (finding extension of time to perfect service would be futile, because the complaint failed

to state a claim as to the remaining defendants), *recons. denied*, 240 F. Supp. 3d 121 (D.D.C.

2017).

**Fed. R. Civ. P. 12(b)(6)**

"In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

court must 'tak[e] note of the elements a plaintiff must plead to state a claim,'" and "determine[]

4

whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "construe the facts, and reasonable inferences drawn from them, in the light most favorable to [the plaintiff]," *Singletary v. Howard Univ.*, 939 F.3d 287, 293 n.1 (D.C. Cir. 2019); however, "[t]he Court need not accept as true any legal conclusions disguised as factual allegations, any 'naked assertion[s] devoid of further factual enhancement,' or any 'formulaic recitation[s] of the elements of a cause of action,'" *Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 265 (D.D.C. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In evaluating a 12(b)(6) motion, courts generally may consider only the alleged facts in the complaint, any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *McNeil v. District of Columbia*, 109 F. Supp. 3d 8, 11 (D.D.C. 2015) (quoting *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 138 (D.D.C. 2015)). A court may take judicial notice of public records from other proceedings. *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005). On a motion to dismiss, courts may also consider documents upon which the plaintiff's complaint necessarily relies, whether produced by the plaintiff or the defendant. *See Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 135–36

(D.D.C. 2015); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).  In this case, because Plaintiff must provide notice under D.C. Code § 12-309 before bringing any tort action for unliquidated damages against the District, the Court may consider documents concerning Plaintiff's non-compliance with § 12-309 without converting the motion to a motion for summary judgment.  *See Martin v. District of Columbia*, 720 F. Supp. 2d 19, 25 n.6 (D.D.C. 2010) (considering police reports in evaluating § 12-309 compliance without converting motion to dismiss to motion for summary judgment); *Patrick*, 126 F. Supp. 3d at 135–36 (same).

"A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint."  *Derringer v. Emerson*, 729 F. Supp. 2d 286, 289 (D.D.C. 2010) *aff'd*, 435 Fed. App'x 4 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

## ARGUMENT

### I.    <u>Plaintiffs Failed to Properly Serve the Individual District Defendants.</u>

Neither Bechtol nor Connell was ever served a copy of the summons and complaint. Moreover, Plaintiffs have not filed the required affidavits of service and it has been more than 90 days since the Complaint was filed.  *See* Fed. R. Civ. P. 4(l)–(m).  Plaintiff has thus failed to effect service on Bechtol and Connell and the claims against these Defendants should be dismissed.  Because perfecting service would be futile in light of the Complaint's other deficiencies as outlined below, the Complaint should be dismissed with prejudice as against Bechtol and Connell.  *See Dominguez*, 536 F. Supp. 2d at 22.

### II.    <u>All of Plaintiffs' Claims Against District Defendants are Time-Barred.</u>

Plaintiff alleges two claims under the RICO Act, as well as a § 1983 claim for First and

Fourteenth Amendment violations and three tort claims: malicious prosecution, abuse of process, and civil conspiracy.  Each claim is time-barred.

A.     **RICO Claims**

District Defendants' only conduct at issue was OAG's representation of Slate in the CPO case, from December 2010 to April 2012, with a brief re-appearance to oppose the reopening of the case in March 2015.  These acts, the last of which occurred more than a decade ago, exceed the RICO statute's four-year statute of limitations.  *See Rotella v. Wood*, 528 U.S. 549, 552 (2000) ("4–year limitations period for civil RICO claims").  Even if District Defendants could be considered a part of a racketeering enterprise with the other Defendants—which they cannot, as District Defendants explain below—the actions of Slate and Barger would not make the claim timely because the statute of limitations began to run when Plaintiffs discovered their injury, *id.* at 553–58 (holding that the limitations period for a civil RICO claim begins when an injury is or reasonably should have been discovered), and Plaintiffs' own exhibits show that they took action to address conduct alleged as predicate RICO acts as early as 2008, *see* Compl. ¶ 40(b) (citing Pls.' Ex. 4 to demonstrate predicate offense of fraud in use of access device); Pls.' Ex. 4, Correspondence between Jonathan Johnson and Go Daddy Copyright Claims Department (July15–21, 2008) (2008 document showing that Kamau complained of alleged fraud to internet domain host).

B.     **§ 1983 Claim**

Plaintiffs allege that District Defendants violated 42 U.S.C. § 1983 by retaliating against them for their investigative journalism in violation of the First Amendment and bringing baseless prosecutions in violation of the Fourteenth Amendment's Due Process Clause.  Compl. ¶ 45. "[W]here state law provides multiple statutes of limitations for personal injury actions, courts

considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). "The District has two statutes of limitations applicable to tort claims: a one-year statute governing enumerated intentional torts, D.C. Code § 12–301(4), and a three-year residual statute covering all other tort actions, *Id.* § 12–301(8)," and the D.C. Circuit "appl[ies] the three-year residual statute of limitations to a section 1983 claim," *id.* (citing *Singletary v. District of Columbia*, 351 F.3d 519, 529 n. 11 (D.C. Cir. 2003)). The allegations concerning District Defendants are limited to the litigation surrounding the CPO that expired in 2012, or, under the broadest possible interpretation, 2015 with the opposition of the motion to reopen the case. D.C. Defs.' Ex. 3, Order, at 2, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct. Apr. 3, 2015). Because more than a decade has passed in the interim, any related § 1983 claim is time-barred.

### C.    <u>Malicious Prosecution</u>

Under District law, the statute of limitations for a claim of malicious prosecution is one year. D.C. Code § 12-301(a)(4). "[I]n the District[,] the statute of limitations for malicious prosecution actions begins to run from the time the underlying criminal or civil action[] is disposed of in favor of the malicious prosecution plaintiff." *Shulman v. Miskell*, 626 F.2d 173, 176 (D.C. Cir. 1980). Under any construction, Plaintiffs' claim related to District Defendants' role in the CPO case, which ended no later than early 2015, is time-barred.

### D.    <u>Abuse of Process</u>

In the District, an abuse of process claim is ordinarily subject to a three-year statute of limitations. *Singh v. District of Columbia*, 881 F. Supp. 2d 76, 82 (D.D.C. 2012). Moreover, "if such claims are intertwined with an intentional tort that is delineated in D.C. Code § 12–301(4),"

such as malicious prosecution, "they are subject to the same one-year statute of limitations as that intentional tort." *Id.* Because the abuse of process claim "'encompass[es] the[ ] same events' as and [is] dependent upon the alleged malicious prosecution, [it] can be considered intertwined with this [malicious prosecution] claim." *Id.* at 82–83 (quoting *Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution*, 245 F. Supp. 2d 17, 23 (D.D.C. 2003)). Under either limitations period, the claim against District Defendants is time-barred because District Defendants' involvement in the CPO case ended, at the absolute latest, in early 2015.

### E.     Civil Conspiracy

"Under District of Columbia law, '[c]ivil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort.'" *Nader v. DNC*, 567 F.3d 692, 697 (D.C. Cir. 2009) (citing *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 334 (D.C. 2007)). "Indeed, because its only purpose is to spread liability for a successful tort claim to all agreeing parties regardless of whether they actually committed the tortious act, a civil conspiracy claim incorporates not only every substantive element of the underlying tort, but also its statute of limitations." *Id.* (citing *Diamond v. Davis*, 680 A.2d 364, 366 n. 4 (D.C. 1996)). Again, even under the most expansive interpretation of District Defendants' conduct, they engaged with the CPO case from December 2010 until early 2015. And co-Defendants' alleged conduct, and Plaintiffs' awareness of their alleged injuries, pre-dated District Defendants' participation in the CPO case. "[F]or tort claims such as those alleged here, a claim accrues when the injury occurs," *Gray v. Staley*, 310 F.R.D. 32, 37 (D.D.C. 2015) (citing *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001), or, at the latest, when a party knows or, through the exercise of reasonable diligence should have known, of the injury suffered as a result of the wrongdoing, *id.* (collecting cases). So, even attributing the actions of the alleged co-

conspirators to District Defendants does not save the claim from being decisively time-barred.

III.   **Plaintiffs' Allegations Fail to State Any Plausible Claim Against District Defendants.**

   A.   **The RICO Claims Fail because the District Cannot be Liable Under RICO and the Complaint Does Not Plausibly Allege Any Element of a RICO Violation.**

      1.   **Municipalities Cannot be Liable Under RICO.**

Plaintiffs' RICO claim lacks merit. As an initial matter, the District, as a municipality, cannot be held liable under RICO. The leading case in the circuit to address the question of municipal liability under RICO, *BEG Investments, LLC v. Alberti*, explained that this is for at least two reasons: "(1) the punitive nature of RICO's treble damages provision, and (2) the inability of a governmental entity to form the malicious intent necessary to commit the underlying . . . violation that gives rise to RICO liability." 85 F. Supp. 3d 13, 28 (D.D.C. 2015). The *BEG* court explained that "the well-established common law proposition that municipal corporations are immune from punitive damages," *id.* (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–63 (1981)), "'the strong weight of authority which supports the characterization of treble damages as punitive,' as well as the absence of any express statutory language providing for municipal liability," *id.* (quoting *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 914 (3d Cir. 1991)), compel the conclusion that a municipality such as the District cannot be liable under RICO.

The *BEG* court cited decisions from the Second, Third, and Ninth Circuits that all reached the same conclusion. In addition to the Third Circuit's holding in *Genty*, the Ninth Circuit held that government entities could not be liable under RICO, both because "public policy is offended if all the citizens of a state are made liable for extraordinary damages as a result of the actions of a few dishonest officials," and because "government entities are incapable

of forming a malicious intent," as required to establish a predicate offense. *BEG*, 85 F. Supp. 3d at 29 (first quoting *Lancaster Cmnty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404–05 (9th Cir. 1991); and then citing *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (summarily rejecting RICO claims against a city because "government entities are incapable of forming the malicious intent necessary to support a RICO action")). Courts in the Second Circuit similarly held that "a municipality cannot form the requisite criminal intent to establish a predicate act." *See id.* (quoting *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) *aff'd*, 182 F.3d 899 (2d Cir. 1999)); *see also id.* (citing *Rogers v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) (holding that "there is no municipal liability under RICO")).

The factors highlighted in these decisions—RICO's punitive nature and municipalities' inability to form the necessary intent for a predicate offense—render RICO inapplicable to municipalities and the Court should thus dismiss Plaintiff's RICO claim against the District.

### 2.    The Complaint Does Not Allege the Elements of a RICO Claim.

Even if a municipality could be held liable under civil RICO, Plaintiff's claims against all District Defendants should be dismissed because the Complaint does not allege the required elements. The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a plausible RICO claim, a plaintiff must "allege four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Brink v. Continental Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (quoting *W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt.*

*Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001)).  The Complaint falls far short of satisfying

these elements.

### a.    Racketeering Enterprise

Plaintiffs cannot show that District Defendants were part of a racketeering enterprise.

Because there is no "partnership, corporation, association, or other legal entity" that includes the

Defendants, 18 U.S.C. § 1961(4), Plaintiffs would need to allege facts demonstrating an

"association-in-fact enterprise," which is "a group of persons associated together for a common

purpose of engaging in a course of conduct."  *Boyle v. United States*, 556 U.S. 938, 946 (2009)

(quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  Such an enterprise "is proved by

evidence of an ongoing organization, formal or informal, and by evidence that the various

associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583, (1981).

> This type of enterprise "must have three structural features: 'a
> purpose, relationships among those associated with the enterprise,
> and longevity sufficient to permit these associates to pursue the
> enterprise's purpose.'"  *United States v. Eiland*, 738 F.3d 338, 360
> (D.C. Cir. 2013) (quoting *Boyle*, 556 U.S. at 946).  "Put differently,
> to successfully state a claim under RICO, a plaintiff must plead facts
> 'identifying the common purpose and organizational and
> decisionmaking structure of the alleged enterprise.'"  *Stankevich v.
> Kaplan*, 156 F. Supp. 3d 86, 94 (D.D.C. 2016) (quoting *Dodd v.
> Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000)), aff'd, 707
> F. App'x 717 (D.C. Cir. 2017).

*Cent. Am. Bank for Econ. Integration v. Mossi*, 24-cv-2544 (CRC), 2025 WL 2732731, at *13

(D.D.C. Sep. 25, 2025).

Plaintiffs fail to show such an enterprise.  First, they not only fail to allege a common

purpose, but they plead themselves out of Court by ascribing distinct purposes to the different

Defendants.  According to Plaintiffs, Slate "manipulated" OAG "to serve his personal agenda: to

remove evidence of his employment from the Internet, suppress evidence of his misconduct, and

gain advantage in related litigation, ABC News, 1:10-cv-01460 (D.D.C.)."  Compl. ¶ 1.

Conversely, Plaintiffs state that District Defendants "*had their own motives*: to suppress the

Plaintiffs' investigative reporting through PoliceAbuse.com, which regularly exposed

governmental misconduct and prosecutorial abuse."  *Id.* ¶ 3(emphasis added).  This sinks

Plaintiffs' claim.  "To adequately plead a cause of action under § 1962(c)," Plaintiffs had to

"allege that the members of the enterprise 'conducted or participated in the conduct of the

"*enterprise's* affairs," not just their own affairs.'"  *Mossi*, 2025 WL 2732731, at *14 (quoting

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  "That is, the participants' actions must be

'undertaken on behalf of the *enterprise* as opposed to on behalf of [the participants] in their

individual capacities, to advance their individual self-interests.'"  *Id.* (quoting *United Food &

Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849,

854 (7th Cir. 2013)).  But Plaintiffs articulate distinct self-interests for the different Defendants

and provide no indication that District Defendants were even aware of, let alone motivated by,

the pre-existing dispute between Plaintiffs and Slate.  And no factual allegation connects District

Defendants in any way to Defendant Barger.  The lack of any factual allegation allowing an

inference of a unified purpose destroys any RICO claim.  "By failing to 'adequately plead[ ] that

[District Defendants] conducted the affairs of the enterprise as opposed to [their] own individual

affairs,' the complaint fails to allege the existence of an 'enterprise' under the RICO Act."  *Id.*

(quoting *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d

288, 314 (D.D.C. 2012)).

### b.    Pattern of Racketeering Activity

Plaintiffs also fail to allege that District Defendants engaged in a "pattern of racketeering

activity," which requires "the commission of at least two predicate racketeering offenses over a

ten year period." *Id.* (citations omitted).  Plaintiffs attribute a single predicate offense to District

Defendants, alleging that they obstructed justice, under 18 U.S.C. § 1503, by withholding

exculpatory evidence.[2]  As an initial matter, this conclusory statement, unsupported by any

factual allegation, cannot support a claim.  *See Lovelein v. United States*, 422 F. Supp. 3d 341,

352 (D.D.C. 2019) ("[c]omplaint baldly alleging that '[e]ach Defendant, working jointly and in

concert, engaged in the obstruction of justice by destroying and spoiling evidence and hiding

exculpatory evidence to try to obtain wrongful convictions against [plaintiffs]'" offered only "the

sort of conclusory allegation [that] cannot permit a reasonable inference of misconduct" (citing

*Iqbal*, 556 U.S. at 679).  But even the exhibit to which Plaintiffs cite does not support their

claim; it merely shows Defendant Connell informing Ferrell's counsel in the CPO case that she

cannot confirm whether she received a Reply hand-delivered to Connell's office.  Pls.' Ex. 14,

Emails between Tim Clinton, Pls.' CPO Case Attorney, and Sarah Connell, Petitioner's Counsel

in CPO Case (Feb. 24–25, 2011).  No plausible reading of the obstruction statute, which

prohibits "corruptly" "imped[ing]" an "officer in or of any court of the United States" or "the due

administration of justice," 18 U.S.C. § 1503, reaches an attorney's statement to opposing

counsel, in a state court matter, that she cannot confirm or deny whether her office received a

reply document.  This single instance of conduct does not meet the elements of a predicate

offense and fails to establish a pattern of racketeering activity.

The pattern requirement also includes "two additional elements: relatedness and

continuity."  *W. Assocs. Ltd. P'ship*, 235 F.3d at 633.  The "relatedness element" requires

"criminal acts that share 'similar purposes, results, victims, or methods of commission, or

---

[2]      Plaintiffs attempt to support each predicate offense with one or more exhibits, *see* Compl.
¶ 40; only the text alleging obstruction of justice, and only the exhibit cited for obstruction of
justice, relate to District Defendants.  *See id*. ¶ 40(d).

otherwise are interrelated by distinguishing characteristics.'" *Id.* (quoting *H.J. Inc. v. NW Bell Telephone Co.*, 492 U.S. 229, 239 (1989)).  And continuity "may be proved by establishing either a 'closed period of repeated conduct' or a threat of future criminal activity." *Id.* (quoting *H.J. Inc*, 492 U.S. at 240).  Plaintiffs do not allege facts showing any relationship between District Defendants' alleged conduct and that of the other Defendants.  Other than the fact that Plaintiffs claim to be victims in each circumstance (although they complain about Slate's *ABC* litigation, to which neither Plaintiff is a party, Compl. ¶¶ 2, 36), there is no connection between District Defendants' role in the CPO case and the other parties' broader dispute.  Nor do the facts support a continual pattern.  The only conduct at issue was District Defendants' participation in a single litigation over a single CPO negotiated with Ferrell over a decade ago.  There is no "repeated conduct" over a closed period, nor do the facts allow an inference of a threat of future criminal activity.

Plaintiffs' allegations do not establish a RICO claim under 18 U.S.C. § 1962 or any claim that any District Defendant conspired to violate RICO under § 1962(d).   Thus, those claims should be dismissed.

**B.**    **Plaintiffs' Constitutional Claims Fail.**

Plaintiffs claim that District Defendants violated their First Amendment rights by targeting Plaintiff's investigative journalism and violated their Fourteenth Amendment right to due process by pursuing baseless prosecutions without probable cause, Compl. ¶¶ 45–49, which District Defendants will treat as a claim under the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia).  They fail to state a plausible claim under either theory.

**1.**    **Plaintiffs Fail to Demonstrate Municipal Liability.**

"To establish municipal liability under § 1983, a plaintiff must allege that (1) 'there was

an underlying constitutional [or statutory] violation;' and (2) 'the municipality's policy or custom caused the constitutional violation.'" *Irving v. District of Columbia*, No. 19-cv-3818 (RDM), 2021 WL 495041, at *5 (D.D.C. Feb. 9, 2021) (quoting *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 155 (D.D.C. 2015)).  To satisfy the "policy or custom" prong of this test, a plaintiff must allege that the municipality did one of four things:

> [A] plaintiff must allege that the municipality (1) "explicitly adopted the policy that was the moving force of the constitutional violation;" (2) "knowingly ignore[d] a practice that was consistent enough to constitute custom;" or (3) failed to "respond[ ] to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations."   A plaintiff may also succeed by alleging that an authorized, municipal policymaker made a one-time decision that resulted in the alleged constitutional deprivation.

*Id.* (first quoting *Warren*, 353 F.3d at 39; and then citing *Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014)).  To establish municipal liability, a plaintiff must also "allege[] an 'affirmative link, such that a municipal policy was the moving force behind the constitutional violation.'"  *Page v. Mancuso*, 999 F. Supp. 2d 269, 282 (D.D.C. 2013) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).  To state a claim under § 1983, a plaintiff must identify the type of municipal policy at issue *and* plead the elements of the relevant type of municipal policy.  *See Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (holding that a plaintiff must "plead the elements of the relevant type of municipal policy" because courts are "unable to determine whether a plaintiff has provided plausible support for her claim when she does not plead those elements" (quoting *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (internal quotation marks omitted)); *Blue*, 811 F.3d at 20 ("If the plaintiff fails to identify the type of municipal policy at issue, the court would be unable to determine, as required by *Iqbal*'s second step, whether the plaintiff had provided plausible

16

support for her claim.  Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not our role.").

Plaintiffs invoke the notion of "callous indifference," but fail to plausibly allege the District's deliberate indifference.  Compl. ¶ 48.  The deliberate indifference standard for establishing a municipal policy is "an objective standard, 'determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act.'"  *Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) (quoting *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011)).  It is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)), and "means that, [when] faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction," *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).  Actual or constructive notice may be shown by demonstrating "[a] pattern of similar constitutional violations."  *Connick*, 563 U.S. at 62.

Here, Plaintiffs fail to identify any purported deficiency in the District's training, or allege that the District was aware, in spite of this training, that their First Amendment rights were being violated by District Defendants.  *See Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 226 (D.D.C. 2018) (holding that plaintiff had not pleaded sufficient factual content to plausibly show that the District was deliberately indifferent to an inadequacy in its training where plaintiff "did not specify a single incident that supposedly alerted the District to a problem").  Plaintiffs attempt to establish some form of notice by including emails to the Attorney General in August 2011 and to Connell's supervisor in August 2012—after the CPO case had closed—in which

Kamau complained that Connell prosecuted Ferrell for amusement because Ferrell is a celebrity, failed to adequately vet Slate as a client, and was too casual with Plaintiffs' counsel in the CPO case. *See* Pls.' Ex. 2, Email from Diop Kamau to Irvin B. Nathan, Attorney General (Aug. 30, 2011 3:35 p.m.); Pls.' Ex. 17, Email from Dip Kamau to Victor Bonett (Aug. 7, 2012). These complaints of unprofessionalism do not indicate a policy or custom of constitutional rights violations, or deliberate indifference to such a custom. Plaintiffs have not plausibly alleged that the District maintained a policy of deliberate indifference to the risk of First Amendment retaliation or due process deprivation. *See Roe v. Wilson*, 365 F. Supp. 3d 71, 83 (D.D.C. 2019) (one prior instance of unconstitutional misconduct could not alone "support a reasonable inference that [that type of] misconduct . . . was so widespread as to put the District on notice of the need to initiate training or take other measures to reduce the risk of future incidents"). They therefore fail to state a claim for municipal liability.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985). "[A]nd '[s]imply citing to [a plaintiff's] own experiences' does not demonstrate that a plaintiff was 'the victim of a policy or custom that caused them to suffer injury.'" *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 28 (D.D.C. 2014) (quoting *Jones v. District of Columbia*, 879 F. Supp. 2d 69, 87 (D.D.C. 2012)). "[I]n nearly all situations plaintiffs must demonstrate a pattern of injuries in order to establish municipal culpability" because there can be "no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate." *Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 151 (D.D.C. 2012) (quoting *Bryan Cnty. v. Brown*,

520 U.S. at 408).  Plaintiffs' failure to point to any unconstitutional acts other than those allegedly committed against them dooms their § 1983 claims against the District, and they should thus be dismissed.

### 2.    Bechtol and Connell are Protected by Qualified Immunity.

Nor can Plaintiffs proceed against Chief Bechtol and Assistant Attorney General Connell for these constitutional claims, because both are protected by qualified immunity.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).  Under this doctrine, courts may not award damages against a government official in their personal capacity unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct."  *al-Kidd*, 563 U.S. at 735.

The "'clearly established' standard also requires that the legal principle clearly prohibit the [employee's] conduct in the particular circumstances before him."  *Wesby v. District of Columbia*, 583 U.S. 48, 63 (2018).  This requires a "high degree of specificity," *i.e.*, the rule's contours must be so well defined that it is "clear to a reasonable [employee] that his conduct was unlawful in the situation he confronted."  *Id.*  "To delineate the body of governing law that a reasonable [employee] should have been aware of, [courts] look[] to cases from the Supreme

Court and the D.C. Circuit, as well as to cases from other courts exhibiting a consensus view." *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 393 (D.D.C. 2016); *but see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (noting that neither plaintiff nor Circuit Court of Appeals had identified any Supreme Court case addressing facts like the ones at issue).

A defendant bears the burden of raising qualified immunity in response to a claim brought under § 1983, *see Crawford–El v. Britton*, 523 U.S. 574, 587 (1998), and once the defense is asserted, "the burden of proof then falls to the plaintiff to show that the official is not entitled to qualified immunity," *Winder v. Erste*, 905 F. Supp. 2d 19, 28 (D.D.C. 2012) (citation omitted); *see also Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015). Thus, "to show a violation of clearly established law, [a plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful." *Rivas-Villegas*, 595 U.S. at 6; *see also City of Tahlequah v. Bond*, 595 U.S. 9, 14 (2021) (reversing denial of qualified immunity where neither "the panel majority nor the respondent has identified a single precedent finding a Fourth Amendment violation under similar circumstances"). "It is [the plaintiff's] burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established," and "not the [government actor's] burden to show that the right had been called into question." *Dukore*, 799 F.3d at 1145 (D.C. Cir. 2015) (citation omitted).

Although Plaintiffs characterize Bechtol and Connell as prosecutors, the exhibits they include to support their claims, and the docket and judicial orders of which the Court may take judicial notice, show that Connell and Bechtol represented Slate as a petitioner for a civil protection order, functioning in a civil rather than criminal capacity. *See* Pls.' Ex. 8, Pet'r's Mot. to Certify Civ. Protection Order Case to Civ. Calendar, No. 2010-CPO-004129 (D.C. Super. Ct.

Dec. 10, 2010); D.C. Defs.' Ex. 1, Docket, *Slate v. Kamau*, No. 2009-CA-005749-B (D.C. Super. Ct.); D.C. Defs.' Ex. 2, Docket, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct.). Plaintiffs provide no factual or legal grounds to conclude that their filings, or alleged threats of jail time, joking repartee with opposing counsel, or attendance at hearings they were not required to attend violated a clearly established right.

        **3.     Plaintiffs Fail to Allege Facts to Support Their Constitutional Claims.**

       Plaintiffs' threadbare allegations do not support their constitutional claims. To plead a plausible First Amendment retaliation claim, Plaintiffs must demonstrate that "(1) [they] engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in [Plaintiffs'] position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against [them]." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quoting *Banks v. York*, 515 F. Supp. 2d 89, 111 (D.D.C. 2007)). Plaintiffs' threadbare allegations do not establish such a claim. Their one-off reference to "investigative reporting" does not satisfy the first prong. Compl. ¶ 3. Nor would providing legal representation for Slate's CPO petition directed at Ferrell necessarily deter Plaintiffs from continuing to publish such unspecified reporting. And Plaintiffs plead no facts whatsoever to support the assertion that District Defendants sought "to suppress the Plaintiffs' investigative reporting" or had "the dual purpose of suppressing protected speech and furthering Slate's fraudulent litigation objectives." *Id.* These conclusory statements do not permit an inference of causation between protected speech and any adverse action and are insufficient to support a plausible claim. *See Iqbal*, 556 U.S. at 678 ("plaintiff armed with nothing more than conclusions" cannot proceed to discovery). Their First Amendment claim should be dismissed.

Plaintiffs' due process theory fares no better.  They offer only threadbare allegations that they were prosecuted without probable cause, and in retaliation for unspecified investigative reporting.  But again, they plead no facts to support these conclusions.  And, in fact, the exhibits they offer undermine their claims; although Plaintiffs insist that Ferrell was unjustly prosecuted, their exhibits and the docket from the CPO matter show it was a civil case.  With the exception of a "Motion to Adjudicate Criminal Contempt" sworn to by Slate, and which no District Defendant signed, Pls.' Ex. 16A, Mot. to Adjudicate Crim. Contempt, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct. May 9, 2011), every filing reflects the civil nature of the litigation, in which Bechtol and Connell represented Slate, D.C. Defs.' Ex. 1, Docket, *Slate v. Kamau*, No. 2009-CA-005749-B (D.C. Super. Ct.); D.C. Defs.' Ex. 2, Docket, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct.).  Plaintiffs' assertions about probable cause and prosecutorial misconduct are entirely inapposite to any constitutional right on which the CPO case could have had an impact, and their claim therefore cannot pass muster.

### C.    Plaintiffs Fail to State Any Plausible Tort Claims.

#### 1.    Plaintiffs' Tort Claims are Barred by their Non-Compliance with D.C. Code § 12-309.

Plaintiffs allege various tort claims, but if they seek to bring them against the District, all are barred by Plaintiffs' failure to notify the District of their intent to sue under D.C. Code § 12-309.[3]  That statute requires any person seeking to bring an action "against the District of

---

[3]    In deciding whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367, the "court must first determine whether the state and federal claims derive from a common nucleus of operative fact." *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 78 (D.D.C. 2011) (citing *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996)).  If so, "the court then must decide whether to exercise its discretion to assert jurisdiction over the state claim." *Id.* at 78–79.  In making this determination, the court must weigh factors of judicial economy, convenience, fairness, and comity. *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995).  Considering these factors, the Court should exercise jurisdiction over the state law claims, as they are closely related to his

Columbia for unliquidated damages" to first "give notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the damage, within six months after the damage was sustained." D.C. Code § 12-309. This provision "imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is mandatory as a prerequisite to filing suit against the District." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (internal quotation marks and citation omitted). Here, Plaintiffs did not provide notice of any tort claim to the District before filing this lawsuit. D.C. Defs.' Ex. 4, Decl. of Donia Pope. Accordingly, if they claim that the District should be liable under a *respondeat superior* theory for the tortious conduct of any of its employees, or that the District itself acted tortiously, such claims should be dismissed. *See District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000) ("Unless it demonstrates compliance with the requirements of § 12-309, a plaintiff's suit against the District is properly dismissed because no right of action or entitlement to maintain an action accrues." (quotation marks and citation omitted)).

### 2.    Plaintiffs' Tort Claims Lack Merit.

#### a.    Malicious Prosecution

"Under District of Columbia law, there are four elements to the tort of malicious prosecution: (1) termination of the underlying suit in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as a result of the original action." *Pitt v. District of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)).

---

primary, federal-law-derived claims, such a resolution would be fair, as Plaintiffs opted to file this action in this Court, and judicial economy supports disposing of all of Plaintiffs' claims, none of which has any merit.

The Complaint does not plausibly allege any element. First, Plaintiffs do not allege that the CPO action ended in Ferrell's favor. *See* Compl. ¶¶ 52–53. Indeed, they do not plead any facts regarding the outcome of the CPO case and their own exhibit shows that a CPO was entered against Ferrell. Pls.' Ex. 18, Mots. To Extend CPO, *Slate v. Ferrell*, No. 2010-CPO-004129 (D.C. Super. Ct.). Second, Plaintiffs offer only conclusory statements, but no factual allegations, to insist that District Defendants' actions in representing the CPO petitioner were "unsupported by probable cause," Compl. ¶ 3, and the only allegations that approach the notion of malicious intent are the conclusory assertions that District Defendants intended to suppress protected speech, *id.* And Plaintiffs plead no special injury. "'Special injury' for purposes of a malicious prosecution claim is defined as 'arrest, seizure of property, or injury which would not necessarily result from suits to recover for like causes of action.'" *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 20 (D.D.C. 2015) (quoting *Lucas v. District of Columbia*, 505 F. Supp. 2d 122, 127 (D.D.C. 2007)). "The injuries [Plaintiffs] complain of are those which 'might normally be incident to the service of process on anyone involved in a legal suit.'" *Morowitz*, 423 A.2d at 198 (quoting *Nolan v. Allstate Home Equipment Co.*, 149 A.2d 426, 430 (D.C. 1959)). Consequently, they fail to plead facts permitting an inference of any element of the claim and it should be dismissed.

### b.    Abuse of Process

"The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)). Importantly, "the fact that a person acts

spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process." *Id.* Rather, "there must be use of the process for an immediate purpose other than that for which it was designed and intended," which is usually "some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Id.* at 755–56.

Plaintiffs assert that District Defendants hoped to suppress investigative reporting, but provide no factual allegations to support this conclusion, or to connect the imposition of a CPO requiring Plaintiffs not to harass Slate online to the suppression of investigative reporting that could be of some conceivable interest to District Defendants. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### c.    Civil Conspiracy

To state a civil conspiracy claim, Plaintiffs need to plead facts to show "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of parties to the agreement, and in furtherance of the common scheme." *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007). But "Civil conspiracy 'is not an independent tort but only a means for establishing vicarious liability for an underlying tort.'" *Id.* (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 n.27 (D.C. 2000)). Because Plaintiffs fail to allege any other tort, the civil conspiracy claim fails. But more specifically, it fails for largely the reasons they cannot state a RICO claim. Plaintiffs do not allege any "common scheme" among the Defendants, nor any "agreement" to participate in an unlawful act. Other than District Defendants' representation of Slate in his capacity as a petitioner under D.C. Code § 16-1003 (2009 ed.), Plaintiffs plead no fact from which to draw any

inference of a relationship of any type between the defendants. The civil conspiracy claim lacks merit and should be dismissed.

## CONCLUSION

For these reasons, District Defendants respectfully request that the Court dismiss the claims against District Defendants.

Date: October 21, 2025                    Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

*/s/ David B. Jastrab*
DAVID B. JASTRAB [1048299]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 309-8882
david.jastrab@dc.gov

*Counsel for District Defendants*

26

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIOP KAMAU, *et al.*,<br><br>            *Plaintiffs*,<br><br>        v.<br><br>GREGORY SLATE, *et al.*,<br><br>            *Defendants*. | 25-cv-2748 (SLS) |

**ORDER**

Upon consideration of District Defendants' Motion to Dismiss, the memorandum of points and authorities in support thereof, any opposition and reply, and the entire record, it is this

_____ day of _____ 2025, hereby

**ORDERED** that District Defendants' Motion is **GRANTED**; and it is further

**ORDERED** that the claims against the District of Columbia, Janese Bechtol, and Sarah Connell are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Copies to:
Diop Kamau                          David B. Jastrab
Tyra Ferrell                        Assistant Attorney General
9217 Hampton Glen Court             *Counsel for District Defendants*
Tallahassee, FL 32312
*Plaintiffs pro se*